IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Willie Junior Hines, #240466, ) <br> aka Willie Hines, Jr., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Spartanburg County Department of ) <br> Social Services; Alice Schaaf; Tiffany ) <br> Bland; Dina Brazil; Jean Bradley; ) <br> Irene Holman; and B.J. Cook, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 7:07-3375-GRA-WMC <br><br> **REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion to dismiss or, in the alternative, for summary judgment. The plaintiff, a state prisoner proceeding *pro se*, alleges in his complaint that his daughter was injured while in foster care. He alleges causes of action including negligence, gross negligence, and negligent infliction of emotional distress against the Spartanburg County Department of Social Services ("SCDSS") and several employees of that agency. He also names as defendants one volunteer and one employee of the South Carolina Guardian Ad Litem Program ("SCGALP"). The plaintiff states that he seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02)(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

On June 5, 2008, the defendants filed a motion to dismiss or, in the alternative, for summary judgment. By order of this court filed June 6, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. On June 19, 2008, the plaintiff filed his opposition to the motion.

**FACTS PRESENTED**

The plaintiff, who is incarcerated at Perry Correctional Institution, alleges that the SCDSS and the individual defendants in their official and personal capacities allowed his daughter, Jasmine Hines, to "almost take her own life in their custody and refused to with deceit not allow the parents to know what happened to their child causing emotional trauma to both" (comp. 3). He further contends that when his daughter told the defendants she was being mistreated in group homes, she was "blamed and medicated without consent from parents and without letting parents know what was going on" (comp. 3). He claims he did not know Jasmine "had been taken until May 2, 2007, which was when he was served with the notice and complaint and summons" (comp. 4). He contends he was told that he would be able to correspond and maybe see Jasmine, but this did not happen (comp. 4). Lastly, the plaintiff alleges that the defendants made an agreement with the mother of Jasmine that she would be allowed visitation with Jasmine, but the agreement was breached by the defendants (comp. 4). He asks "to be compensated for the mental and emotional trauma" he and his family have endured (comp. 5).

According to the evidence before this court, Jasmine, who was 15 years old at the time, entered foster care on February 5, 2007, as a result of a verbal altercation with her mother. The Family Court issued a finding of substantial risk of harm of physical abuse by Jasmine' mother and the mother's live-in boyfriend. The mother and her boyfriend did not comply with a treatment plan, and the mother did not visit Jasmine regularly. Jasmine moved into the Crossroads Group Home on May 29, 2007 (pl. resp. m.s.j., ex. g). On July 21, 2007, Jasmine was admitted into the Greenville Hospital System for concerns for suicidal/homicidal ideation. Jasmine had taken the sheets off her bed and made a rope to hang herself. She was discovered and was stopped from hurting herself, and she was taken to the emergency room and later admitted to the hospital for observation (pl. resp. m.s.j., ex. C).

In a report dated March 31, 2008, Jasmine's therapist/case manager, advised the court that Jasmine had not seen her father since she was three years old. At that time, the plaintiff had been in a residential facility since August 5, 2007, after her hospitalization at a psychiatric hospital. According to the report, it did not matter to Jasmine whether she saw her father as he was not an intricate part of her life. The therapist's opinion was that due to Jasmine's history of physical abuse at the hands of her mother and having witnessed her mother's dysfunctional relationship with her live-in boyfriend, visiting her father in prisoner "would further distort [Jasmine's] view of a healthy relationship with a father and daughter" (pl. resp. m.s.j., ex. H).

On June 26, 2008, a hearing was held before The Honorable James F. Fraley, Jr., the Presiding Judge of the Family Court, Seventh Judicial Circuit. Judge Fraley heard testimony from the plaintiff and Jasmine's caseworker, her group therapist, and the Guardian ad Litem. By order dated August 6, 2008, Judge Fraley found that it had been several years prior to Jasmine's entry into foster care since she had visited with the plaintiff. Judge Fraley denied the plaintiff's requests for visitation with Jasmine in the prison setting and telephone visitation with her while he is incarcerated (def. reply, ex. A).

Defendant Tiffany Bland was an Investigator and Foster Care Worker employed by the SCDSS from September 2004 until March 2008 (Bland aff.). Defendant Jean Bradley is employed with the SCGALP and is the Seventh Judicial Circuit Coordinator for Spartanburg and Cherokee Counties (Bradley aff.). Dina Brazil is employed with the SCDSS as a Child Protective Services Investigator (Brazil aff.). Defendant B.J. Cook was employed by the SCDSS from 1980 until his retirement in 2008. He served as the Managed Treatment Services Coordinator (Cook aff.). Defendant Irene Holman is a volunteer with the SCGALP in the Seventh Judicial Circuit (Holman aff.). Defendant Alice Schaaf is a Case Manager with the SCDSS (Schaaf aff.). The individual defendants all

testified in their affidavits that any involvement they had in this case would have been directly related to their employment or volunteering with a state agency.

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted). If on a motion pursuant to Rule 12(b)(6), matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.

This court is required to construe *pro se* complaints and petitions liberally. Such *pro se* complaints and petitions are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, *Leeke v. Gordon*, 439 U.S. 970 (1978), and a federal district court is charged with liberally construing a complaint or petition filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2nd Cir. 1975). Even under this less stringent standard, the complaint is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

4

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits. As matters outside the pleading have been presented to and not excluded by the court, the defendants' motion to dismiss for failure to state a claim shall be treated as one for summary judgment.

## **ANALYSIS**

### *Eleventh Amendment Immunity*

Defendant SCDSS is immune from suit in this Section 1983 action pursuant to the Eleventh Amendment to the United States Constitution, which provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the Supreme Court discussed the application of the Eleventh Amendment in Section 1983 actions, stating:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

*Id.* at 66 (citations omitted). The South Carolina Department of Social Services is an agency of the State of South Carolina, and the SCDSS is one of the county offices of that state agency. The SCGALP is a part of the Division of Children's Services under the Office

6

of the Governor, is state-funded, and operates in the state's counties. The Supreme Court has found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. *Id.* at 70. Although a State may consent to suit in a federal district court, which serves to waive sovereign immunity, *Lapides v. Board of Regents*, 535 U.S. 613 (2002), the State of South Carolina has specifically denied consent to suit in federal district court. *See* South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-20(e). The plaintiff specifically states in his opposition to the motion for summary judgment that he has brought the instant action pursuant to Section 1983 (pl. resp. m.s.j. 2-3), and in his complaint, he seeks money damages (comp. 5). Based upon the foregoing, the defendant SCDSS and the individual defendants in their official capacities are entitled to Eleventh Amendment immunity and should be dismissed from this action. *See Daley v. Hanover County ex re. Hanover County Dept. of Social Services,* No. 95-2360, 1996 WL 276978, *2 (4th Cir. 1996) (dismissing claims against Hanover County Department of Social Services and its employees to the extent they acted in their official capacities because they were entitled to Eleventh Amendment immunity); *Jeter v. Harris*, No. 0:07-00857-GRA-BM, 2007 WL 1795788, *2 (D.S.C. 2007) (holding that Lexington County Department of Social Services, a county office of a state agency, was entitled to Eleventh Amendment immunity); *Jensen v. Conrad*, 570 F.Supp. 114, 125 n. 23 (D.S.C. 1983) (holding that to the extent claim was against the Board of the Anderson County Department of Social Services the claim was barred by the Eleventh Amendment, as State Department of Social Services functions as the alter ego of the state and the Anderson County Department of Social Services was merely an arm of the state agency).

### *Qualified Immunity*

The plaintiff also brings the complaint against the individual defendants in their personal capacities. The individual defendants argue that they are entitled to qualified

immunity as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In his response to the motion for summary judgment, the plaintiff claims that he has "material evidence" to prove his allegations. He further notes that his claims are not "tort claims"; his action is a Section 1983 civil rights action (comp. 2-3). The plaintiff contends that the grounds for his lawsuit are: negligence, gross negligence, negligent infliction of emotional distress, and substantive due process (comp. 2). The evidence submitted in support of his opposition to the motion for summary judgment consists of the his daughter's medical records and a letter from Jasmine to the plaintiff dated

8

November 10, 2007. In that letter, Jasmine stated that she recently got into a fight with a staff member. She also stated that she was ready to go home because she missed her mother and brothers. She further stated that she was going to see if she could get visits with the plaintiff (pl. resp. m.s.j., ex. A). The evidence before the court is that the plaintiff's daughter was taken into custody by the South Carolina Department of Social Services for appropriate reasons and that she did at one time attempt to commit suicide and was stopped by staff and received appropriate medical treatment. There is absolutely no evidence before this court that the defendants violated the plaintiff's constitutional rights. Further, there is absolutely no evidence that the defendants were even negligent in their involvement with the plaintiff's daughter. "Because a § 1983 claim cannot be sustained, it follows that the defendants are entitled to qualified immunity." *Martin v. Saint Mary's Dept. Social Services*, 346 F.3d 502, 507 (4th Cir. 2003).

### *South Carolina Tort Claims Act*

The South Carolina Tort Claims Act ("SCTCA") provides:

(a) This chapter constitutes the exclusive remedy for any tort committed by an employee of a governmental entity. An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided for in subsection (b).

(b) Nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.

S.C. Code Ann. § 15-78-70(a), (b). South Carolina Code § 8-25-40(b) provides in pertinent part, "Volunteers in state service shall enjoy the protection of sovereign immunity of the State to the same extent as employees." If the plaintiff's complaint is construed to state a claim under the SCTCA, the claim should be dismissed as the plaintiff has failed to present

9

any evidence that the defendants have failed to meet the "slight care" standard established in *Jackson v. SCDC*, 390 S.E.2d 467, 468 (S.C. Ct. App. 1989) (interpreting gross negligence as the failure to give "slight care").  The plaintiff has failed to show any evidence that the defendants were negligent, much less grossly negligent, in their actions.  Based upon the foregoing, the alleged acts of the defendants fall within the exception to the waiver of immunity set forth in South Carolina Code Annotated Section 15-78-60(25), which provides:

> The governmental entity is not liable for a loss resulting from:
> \*\*\*
> (25) responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner . . . .

S.C. Code Ann. § 15-78-60(25).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment (doc. 61) be granted. The pending nondispositive motions will be held in abeyance pending the district court's disposition of the motion for summary judgment.  Should the district judge adopt this court's recommendation, these motions will be rendered moot.

IT IS SO ORDERED.

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

January 14, 2009

Greenville, South Carolina